**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **FIRST AMERICAN TITLE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **NO. 2:07-0072** |
| | ) | **JUDGE CAMPBELL** |
| **CUMBERLAND COUNTY BANK,** | ) | **MAGISTRATE JUDGE GRIFFIN** |
| **RUSSELL T. GARLAND, NOELLE** | ) | |
| **R. GARLAND, PARAMOUNT TITLE** | ) | |
| **SERVICES, LLC and FRANCES M.** | ) | |
| **ATKINS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Pending before the Court are cross-motions for summary judgment filed by all parties

(Docket Nos. 86, 88, 90, 92, 96, 98, and 116).

*I.      Introduction*

Plaintiff First American Title Insurance Co. ("Plaintiff" or "First American Title") filed

this diversity action against five Defendants, alleging state law causes of action.  Plaintiff seeks

reimbursement of money it paid pursuant to a title insurance policy it issued, insuring title to

certain real property in Cumberland County, Tennessee.   Plaintiff's action for reimbursement is

based on subrogation rights originating with its insureds, Alfred and Carolyn Merrill.  Plaintiff

alleges that it paid $286,503.62 on behalf of the Merrills to avoid foreclosure on the subject

property.  The primary dispute in this controversy is which party should be blamed for the

Plaintiff's having to pay this title insurance claim; that is, whose fault it was that a certain deed

of trust was not known to the Merrills or released when they purchased the subject property.

Every Defendant herein blames another.  Plaintiff blames every Defendant, jointly and severally.

Plaintiff seeks reimbursement for that amount, plus $24,738.12 in attorneys' fees and expenses incurred in connection therewith, plus punitive damages, against the Defendants, jointly and severally.

## II.    Facts[1]

In December 2003, John and Sheryl Harris were the owners of a piece of real property located at 122 Mountain View Drive in Fairfield Glade, Tennessee in Cumberland County (the "Stonehenge Property").   On December 12, 2003, the Harrises signed a promissory note payable to Cumberland County Bank (the "Bank") in the amount of $199,991.27.  As security for the First Note, the Harrises signed a deed of trust in favor of the Bank encumbering the Stonehenge Property.

Robert R. Bond, Executive Vice President and Loan Officer of the Bank, closed on the First Note.   Mr. Bond worked at the Bank for approximately 27 years.  It is disputed whether Mr. Bond approved the loan.  (Docket No. 154, ¶ 7).

In March 2004, the Harrises owned another piece of real property known as Lot # 7 in the Homestead Place Subdivision located in Cumberland County, Tennessee (the "Homestead Property").   On March 4, 2004, the Harrises signed a promissory note payable to the Bank in the amount of $248,000 for improvements to the Homestead Property.  As security for the Second Note, the Harrises signed a deed of trust in favor of the Bank encumbering both the Homestead

---

[1]All facts set forth in this Memorandum are taken from the parties' briefs filed in support of their cross-motions for summary judgment and exhibits thereto.  All facts are undisputed unless otherwise noted.

Case 2:07-cv-00072   Document 178   Filed 04/20/09   Page 2 of 40 PageID #: 4861

Property and the Stonehenge Property. Additionally, Defendant Russell T. Garland guaranteed the Second Note.

At its inception, the $248,000 loan was apparently well-secured, even leaving aside Dr. Garland's guaranty. The collateral for this loan was valued at $425,000, resulting in a LTV (loan-to-value) ratio of 58.35%. $310,000 of this collateral value was attributed to the appraised "as-completed" value of Homestead and the remaining $115,000 to the estimated equity in Stonehenge. It is disputed whether the $115,000 attributed to the Stonehenge Property was over and above the $200,000 deed of trust thereon. (Docket No. 153 at 3-4).

As with the First Note, Mr. Bond closed on the Second Note and the deed of trust which encumbered both the Stonehenge Property and the Homestead Property. It is disputed whether he approved the loan. (Docket No. 154, ¶ 7).

In October 2004, Alfred and Carolyn Merrill entered into a purchase agreement with the Harrises for the Stonehenge Property. Either Mr. Harris or Mr. Merrill arranged for Paramount Title Services, LLC ("Paramount") to perform the closing of sale for the Stonehenge Property. (Docket No. 154, ¶ 9).

Paramount is an agent of First American Title and is authorized to issue title insurance policies in the name of First American Title, pursuant to the agency contract between Paramount and First American Title. An Attorney Agency Contract ("Agency Contract") between First American Title Insurance Company and Paramount Title Services, LLC (known at the time as Covenant Title & Escrow Services, LLC) was executed on February 7, 2000 and signed by Richard K. Evans, the owner of Paramount. The Agency Contract provides that Paramount shall indemnify First American Title and hold First American Title harmless from all losses,

3

including attorney's fees, suffered by First American Title as a result of Paramount's failure to comply with the terms of the Agency Contract, or as a result of Paramount's failure to include in a title insurance policy appropriate requirements or exceptions to any lien, claim, encumbrance, defect, or objection, which should have become known to Paramount in the course of a careful and prudent title examination. Agency Contract, p. 3, ¶ 8(d). Paragraph 8 subsection (f) of the contract provides:

> Agent shall have no responsibility for the accuracy or correctness of certified abstracts or title insurance policies upon which he relies in determining the insurability or marketability of title provided such title evidence relied upon is generally applicable in Agent's area by prudent examining attorneys and by prudent dealers in real estate and interests therein.

(Agency Contract, p. 3, ¶ 8(f)).

Paramount retained Defendant Frances Atkins to perform a title examination or search on the Stonehenge Property for use in the sale of the Stonehenge Property from the Harrises to the Merrills. Ms. Atkins was the owner of Atkins Abstracting, a sole proprietorship in the business of title examinations. As part of her business, Ms. Atkins provides title examination reports to title companies, like Paramount, for use by title companies in issuing title insurance policies on behalf of companies like First American Title. Her title examination reports are relied on by real property purchasers for assurance that they will be getting clear title to the property they are purchasing.

It is an acceptable practice in Cumberland County, Tennessee, to use an independent contractor to perform title examinations in conjunction with providing closing services for the sale of real property. Contracting the title examination services of independent contractor Atkins would be acceptable to prudent title examiners and prudent title examining attorneys in

4

Cumberland County, Tennessee. Paramount's reliance upon the title examination document provided by Atkins in determining the insurability and marketability of real property complies with the generally accepted practice in Cumberland County, Tennessee.

Libby Young, Ms. Atkins's sister, worked as an employee of Atkins from February 2004 to 2008. Ms. Young performed title examinations using an online program for the courthouse called "Title Searcher" to search real estate records. At the time, Ms. Young had the training, experience, and knowledge reasonably necessary to perform a proper title examination and conducted approximately two or three title examinations per day. On October 22, 2004, Ms. Young performed a title examination on the Stonehenge Property. Ms. Young prepared and signed a title examination document for Paramount which listed the deed of trust for the First Note as the only encumbrance on the Stonehenge Property. The deed of trust for the Second Note that encumbered the Stonehenge Property was not listed on the report. Ms. Young admitted in her deposition that she had made a mistake in failing to list the deed of trust for the Second Note on the title examination document. (Young Dep., p. 49).

The parties dispute whether Ms. Young's report constitutes a "certified abstract" as that term is used in the Agency Contract between First American Title Insurance Company and Paramount Title Services, LLC. It is undisputed that the term "certified abstract" is not a term of art in Tennessee within the title agency business. First American Title's attorney, Mark D. Rosser, testified by affidavit that he did not believe the document prepared by Ms. Young to be a certified abstract as he understood that term. (Rosser Second Aff., ¶ 5).

5

Atkins was responsible for the accuracy and correctness of the title examination report or abstract sent to Paramount, and she admits that Paramount was entitled to rely upon the document in determining the insurability and marketability of the Stonehenge Property. (Atkins' Response to First Request for Admission, ¶ 9). Paramount relied on Ms. Atkins's title examination document in issuing a title commitment for the Stonehenge Property to its detriment. (Cox Dep., p. 28). Ms. Atkins admits that Paramount acted reasonably in relying on the title examination abstract based on the generally acceptable practices in Cumberland County, Tennessee. (Atkins' response to First Request for Admission, ¶ 10).

In October of 2004 Paramount sent a payoff request to the Bank with regard to the Stonehenge Property. On October 28, 2004, Mr. Bond sent the Bank's payoff statement to Paramount. The payoff statement received from the Bank listed only the deed of trust for the First Note as the quoted payoff amount due from John Harris for the Stonehenge Property. The payoff statement did not include the payoff amount due on the $248,000 Second Note.

The Merrills closed on the property on November 1, 2004. The Merrills paid $345,000 at the closing. Paramount paid the Bank $200,017.16. The Harrises received $123,106.71, the residue of the sale price after closing costs and the payoff of the $200,000 loan.

After the sale to the Merrills was completed, the Bank failed to inform Paramount that the deed of trust for the Second Note still encumbered the Stonehenge Property. The Bank signed a Partial Release that released the Homestead Property, but not the Stonehenge Property, from the deed of trust for the Second Note. The Bank assigned the deed of trust for the Second Note encumbering only the Stonehenge Property to Russell T. Garland and Noelle R. Garland.

6

Paramount contends that it relied on the accuracy of the payoff statement given by the Bank on the Stonehenge Property in closing the sale from the Harrises to the Merrills (Cox Dep., p.110) and that the Bank had a duty to check its records and quote to Paramount an accurate payoff amount that would satisfy the entire amount owed to the Bank on the Stonehenge Property. (Weekly Dep., pp. 6 and 26.) The Bank disputes Paramount's contentions, alleging that it had a duty to respond in good faith only to what was requested of it, which the Bank maintains it did.

First American Title contends that the Bank payoff statement shows that Paramount was to have called the Bank again prior to closing. (Complaint, Ex. G). Yet, Ms. Cox, Paramount's Branch Manager, testified that she had no knowledge that Paramount called the Bank prior to closing. (Cox Dep., p. 85).

In early 2005, the Cumberland County Bank realized that approximately 90% of Mr. Harris' $248,000 construction loan had been expended, but the house on the Homestead Property was only 45% completed. It is disputed whether the Bank knew or knows for what purpose Harris actually used the loan advances. (Docket No. 153 at 5).

On February 25, 2005, the Bank, the Harrises, and Dr. Garland met to discuss the Homestead situation. The parties tentatively agreed that Harris would complete construction of Homestead for $168,000 and that Dr. Garland would purchase the house for $355,000. The Bank's lien on Stonehenge was not mentioned at the February 25, 2005 meeting. (Docket No. 153 at 8).

The tentative agreement fell apart. The Harrises moved to the Nashville area, leaving the Homestead residence uncompleted. Before leaving town, the Harrises deeded Homestead to the

7

Garlands. It is disputed whether any money changed hands for this property transfer. The Garlands spent not less than $214,989.48 for labor, materials, and other construction-related services to complete the Homestead residence.

In February 2006, the Garlands obtained a new loan from the Cumberland County Bank. The disbursement statement for the closing of the loan, dated February 3, 2006, shows a payoff of the $248,000 loan that was secured by the deed of trust on both the Homestead and Stonehenge Properties. Following this closing, the Bank executed a Partial Release of the $248,000 deed of trust, again releasing only the Homestead Property, and not the Stonehenge Property. Twenty days later, on February 23, 2006, the Bank made an assignment of the $248,000 deed of trust to the Garlands. On February 23, 2006, the $248,000 Note was endorsed by the Bank to the Garlands.

In 2006, the Garlands retained an attorney and threatened to foreclose on the $248,000 Deed of Trust that still encumbered the Stonehenge Property if the Merrills did not pay the Garlands the full amount due on the note. The attorney gave notice to Paramount, who in turn notified First American Title of the problem. First American Title alerted the Merrills to the problem. As required by the title insurance policy, First American Title retained counsel, at First American Title's expense, to defend the Merrills' title to the property and to attempt to prevent the foreclosure. Counsel retained by First American Title filed suit on behalf of the Merrills in state court against the Garlands and the Bank, seeking an injunction against foreclosure, and seeking to set aside the deed of trust. As a result of the suit, the Garlands did not immediately proceed with foreclosure.

8

While the state court suit was still pending, the Garlands gave notice that they were again proceeding with foreclosure, and that the sale would be held September 21, 2007. Counsel for the Merrills filed an application for a restraining order and temporary injunction, or in the alternative, for an order that if the Merrills were the successful bidders at the foreclosure sale, they would be permitted to pay bid money into court rather than to the Garlands. However, the state court denied the Merrills' request for a restraining order and injunction and denied their request to be permitted to pay bid money into court.

To avoid a foreclosure on the Merrills, First American Title paid the Garlands $286,503.62, which the Garlands contended was the total amount due and owing on the $248,000.00 note secured by the deed of trust, including principal, interest, attorney's fees, expenses, and costs of foreclosure. In preparing and prosecuting the suit to defend the Merrills' title to the property and the attempt to enjoin the foreclosure, First American Title claims that it incurred reasonable counsel fees and expenses of $24,738.12.

Once the deed of trust was released, the Merrills filed a voluntary dismissal of the state court action, without prejudice. This action was filed on October 17, 2007.

### III. *Standard of Review*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Meyers v. Columbia/HCA Healthcare*

9

*Corp.*, 341 F.3d 461, 466 (6th Cir. 2003); *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

**IV.     Analysis**

> **A.     Cross-Plaintiff Paramount Title Service LLC's Motion for Summary Judgment against Cumberland County Bank (Docket No. 86) and the Bank's Cross-Motion against Paramount Title (Docket No. 116)**

>> **1.     Equitable Estoppel**

Paramount Title Service LLC does not assert any independent claim against the Bank, but seeks only contribution and/or indemnity from the Bank with respect to any damages that might be awarded against Paramount in favor of First American Title.  In its motion for summary judgment, Paramount asserts that it is entitled to summary judgment against the Bank under the principles of equitable estoppel.

To establish a claim for equitable estoppel in Tennessee, the party asserting the claim must prove that the opposing party:  (1) engaged in conduct which amounts to a false representation or concealment of material facts; (2) knew or expected that the other party would act upon the conduct; and (3) knew or had constructive knowledge as to the actual facts. *Thornton v. Higdon,* 2008 WL 4693737, *5  (Tenn. Ct. App. Oct. 23, 2008)(citing *Douglass v. Rowland,* 540 S.W.2d 252, 254 (Tenn. Ct. App. 1976)).   The party asserting the claim must also prove that it lacked knowledge and means of knowledge about the truth and relied upon the conduct of the opposing party to its detriment.  *Id.*

Where facts constituting an estoppel are undisputed, a question of estoppel becomes one of law, but where facts constituting an estoppel are disputed, the question of estoppel is one of fact.  *Northeast Knox Utility Dist. v. Stanfort Constr. Co.,* 206 S.W.3d 454, 461 n.3 (Tenn. Ct.

10

App. 2006)(quoting *Consol. Coal Co. v. O'Brien,* 3 Higgins 252 (Tenn. Civ. App. 1913)).

"Thus, determining whether to invoke equitable estoppel requires the courts to examine the facts and circumstances of the particular case." *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004).

Paramount Title Services LLC claims that the undisputed facts adduced by the parties meet all the elements for equitable estoppel. Specifically, Paramount claims that it sent a payoff request for the entire Stonehenge property; information contained in the payoff request was adequate; the Bank failed to report the deed of trust for the Second Note encumbering the Stonehenge Property; the Bank failed to inform Paramount that the deed of trust for the Second Note still encumbered the Stonehenge Property and instead assigned the right to the Garlands; and Paramount detrimentally relied on the information provided by the Bank in continuing with the closing for the Stonehenge Property.

Some of these facts are disputed, however. The Bank disputes that it had a duty to check its records and quote to Paramount an accurate payoff amount that would satisfy the entire amount owed to the Bank on the Stonehenge Property. It maintains that its duty only was to respond in good faith to what was requested of it, and it did so. The Bank also disputes whether Paramount should have relied and did rely on the accuracy of the payoff statement given by the Bank on the Stonehenge Property in closing the sale from the Harrises to the Merrills of the Stonehenge Property.

In addition, the Bank points out that Paramount cannot satisfy its burden of showing that, as the party invoking equitable estoppel, it lacked knowledge of the truth of how many Bank deeds of trust were of record on the Stonehenge Property. As a matter of Tennessee law,

11

Paramount is imputed with constructive knowledge of the Bank's publicly recorded deeds of trust. *See Merchants State Bank v. First Tennessee Bank*, 1993 WL 424817 (Tenn. Ct. App. Oct. 22,1993); *SunTrust Bank v. Stoner,* 2008 WL 4443281, at *4 (E.D. Tenn. Sept. 26, 2008). It is undisputed that both deeds of trust on the Stonehenge Property had been properly recorded in the Register's Office. Thus, argues the Bank, Paramount had constructive notice of the fact that the Bank had two deeds of trust that secured two different loans.

Moreover, says the Bank, Paramount did not lack the means of obtaining knowledge about the truth. The undisputed facts show that Paramount was in the business of searching and examining titles and of issuing title insurance commitments and title insurance policies. And, although it elected to rely on the Atkins' title report and failed to properly examine Ms. Young's title search notes, Paramount was in possession of the notes which listed both deeds of trust. For all of these reasons, the Court finds that Paramount's summary judgment motion as to the issue of equitable estoppel must be denied.

### 2. Contribution

In the Bank's cross-motion for summary judgment, the Bank seeks summary judgment on Paramount Title's contribution claim against the Bank. (Docket No. 116).

The right of contribution only exists between parties who share a common obligation or liability. *See Squibb v. Smith*, 948 S.W.2d 752, 754 (Tenn. Ct. App. 1997). Thus, contribution is only available against joint tort-feasors, *see* Tenn. Code Ann. § 29-11-101, or joint obligors, *see e.g., Baxter v. Smith*, 364 S.W.2d 936, 939 (Tenn. 1962).

The Bank correctly points out that the only claims asserted by First American Title against Paramount Title are for breach of contract, namely breach of the Agency Contract

12

(Docket No. 1, Compl. ¶¶ 39-40). Thus, there can be no right of contribution; the Bank is not liable on the Agency Contract to First American Title. Paramount does not respond to the Bank's argument. The Bank's motion will be granted as to Paramount's contribution claim against the Bank, and that contribution claim will be dismissed.

### 3. Indemnity

The Bank also contends that Paramount Title is not entitled to indemnity. In Tennessee, a contract of indemnity may be implied by the relationship of the parties. *Houseboating Corp. of Am. v. Marshall*, 553 S.W.2d 588, 589 (Tenn. 1977). A person's right to recover under the theory of indemnification and the right to recover attorney fees based on indemnification depends on the relationship of the parties and the fault of the parties. *Id.*; *Electronic Controls v. Ponderosa Fibres of Am.*, 19 S.W.3d 222, 229 (Tenn. Ct. App. 1999); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 339 (Tenn. 1985)(holding that the right to indemnity for any judgment is "based upon the relationship between the parties and their respective degrees of fault.").

Tennessee law provides for implied indemnification only in situations in which the party to whom the loss is to be shifted is at fault or is responsible to a degree that is "qualitatively different" from the party seeking indemnity. *See, e.g, Winter v. Smith*, 914 S.W.2d 527, 541-42 (Tenn. Ct. App. 1995). The determination of whether such a qualitative difference in fault exists may in appropriate circumstances be made as a matter of law without the need for a trial. *See Velsicol Chem. Corp. v. Rowe*, 543 S.W.2d 337, 339 (Tenn. 1976).

The Bank asserts that this case presents an indemnity issue clear enough to be decided as a matter of law. The Court disagrees.

First American Title's breach of contract claim against Paramount Title is founded on the defective title search and ensuing title commitment issued by Paramount binding First American Title to issue the policy on which the loss was eventually suffered. First American Title's claim against the Bank is founded on the Bank's incorrect payoff letter. The Court finds that summary judgment is inappropriate, given the many issues of disputed fact regarding whether Paramount is or is not entitled to indemnity against the Bank. Under these circumstances, the trier of fact should determine whether these parties were negligent and, if so, whether the negligence of the Bank was or was not qualitatively greater than the negligence of Paramount in issuing the commitment based upon a defective search.

Accordingly, Paramount's motion against the Bank will be denied, and the Bank's motion against Paramount will be granted in part and denied in part. Paramount's contribution claim against the Bank will be dismissed.

**B.** ***Cross-Plaintiff Paramount Title Service LLC's Motion for Summary Judgment against Frances M. Atkins (Docket No. 88)***

Paramount contends that it is entitled to summary judgment in its cross-claim against Ms. Atkins under the principles of common law indemnity.

The nature of the relationship between Paramount Title and Ms. Atkins is disputed. Paramount contends that an implied contract of indemnity exists because it hired Ms. Atkins as an independent contractor to perform a title examination for Paramount Title in connection with the closing. Ms. Atkins points out that Paramount was a sophisticated institution and it could have contracted for an indemnity provision, yet it did not. Ms. Atkins has adduced facts showing

14

that she was paid a mere $65 for her research, which she claims indicates that she did not have the intent to contract with Paramount for indemnity for an alleged negligent act.

Even if there is a sufficient relationship between Ms. Atkins and Paramount, Ms. Atkins contends that Paramount's negligence precludes its ability to assert common-law indemnity and recover attorney's fees. Paramount, conversely, maintains that it bears no fault in relation to this litigation. However, Ms. Atkins has adduced facts suggesting that, although Paramount was to have called the Bank again prior to closing, it failed to do so. Thus, at this stage of the proceedings, there is an issue of fact as to Paramount's conduct in connection with the closing. Paramount's motion for summary judgment as to Defendant Atkins must be denied. *See Houseboating*, 553 S.W.2d at 588 (a party should only be entitled to indemnification after the trier of fact determines fault between the parties); *Barrett v. Red Food Stores, Inc.*, 1992 WL 33891 (Tenn. Ct. App. Feb. 26, 1992) (same). Accordingly, Paramount's motion against Atkins will be denied.

### C.    *Cross-Plaintiff Paramount Title Service LLC's Motion for Summary Judgment against Plaintiff First American Title Insurance Company (Docket No. 90); Plaintiff First American Title Insurance Co.'s Motion for Summary Judgment against Defendant Paramount Title Services, LLC (Docket No. 92)*

First American Title preliminarily opposes Paramount's motion for summary judgment on the grounds that the motion was filed in violation of the orders of this Court. (Docket No. 130 at 1-2). The Court signed and entered an Order (Docket No. 5) providing, among other things, that no party could file more than one summary judgment motion except on Order of the District Judge. The Court's requirement was repeated in several subsequent orders. (Docket Nos. 32, 77, 119). Plaintiff points out that Paramount Title filed three summary judgment motions (Docket Nos. 86, 88, 90) in violation of the Court's orders. Since the motion for

summary judgment against Plaintiff was the third summary judgment motion filed by Paramount, Plaintiff asserts that the motion should be denied because it was filed in violation of the Court's clear and repeated orders.

Although it is true that Paramount Title did not seek permission from the Court to file its second and third motions for summary judgment, the filing restriction set forth by the Court is intended to prevent multiple motions at different times against the same party. There is no assertion of prejudice against Plaintiff or any other party. Paramount's motion cannot be denied for this reason alone.

Likewise, even though Plaintiff points out that Paramount's motion for summary judgment as to First American Title did not comply with Local Rule 56.01 because it was not accompanied by a concise statement of facts as to which Paramount contended there is no dispute, Paramount eventually filed the statement on November 7, 2008. (Docket No. 123). As a result, there is no prejudice to First American Title.

These parties' cross-motions for summary judgment deal primarily with one substantive legal issue: indemnity. First American Title has sued Paramount to recover the sums paid by First American Title on behalf of its insureds, the Merrills. First American Title contends that Paramount is liable as a matter of law to indemnify First American Title for its damages pursuant to the Agency Contract between First American Title and Paramount.

Paramount, however, points to Section 8.f of the Agency Contract, which states that Paramount is not responsible for the accuracy or correctness of a "certified abstract" of title which it uses to determine the marketability or insurability of property if such title evidence is generally accepted in the area. Paramount contends that the title exception report submitted by

Atkins' employee is a certified abstract of title within the meaning of the Agency Contract; therefore, Paramount argues, it is not required to indemnify First American Title, having relied on the certified abstract provided by Atkins.

The Agency Contract does not define the term "certified abstract." The Tennessee Code does not contain a definition for "certified abstract" or, alternatively, "certified abstract of title." Tennessee, unlike some states, does not license title abstractors. Both First American Title and Paramount agree that "certified abstract" is not a term of art in Tennessee in the title insurance business, and the term is typically not used in Tennessee.

The primary rule of contract interpretation is to ascertain and give effect to the intent of the parties. *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005). Since the Agency Contract does not define the term "certified abstract," the Court must give those words their "usual, natural and ordinary meaning." *Marlin v. Fin. & Leasing Corp. v. Nationwide Mut. Ins. Co.*, 157 S.W.3d 796, 809 (Tenn. Ct. App. 2004); *see Christenberry*, 160 S.W.3d at 494 (absent fraud or mistake, the terms of a contract should be given their plain and ordinary meaning). To aid in this task, the Court turns to the dictionary. *Marlin*, 157 S.W.3d at 809 (citing *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 815 (Tenn. 2000)). "Abstract of title" is defined as a summary or account of the state of the title to real property, which "should contain a full summary of all grants, conveyances, wills and all records and judicial proceedings whereby the title is in any way affected, and all encumbrances and liens of record, showing whether they have been released or not." *Ballentine's Law Dictionary* (3d ed. 1969). "Certify" is defined as "to authenticate by a certificate; to vouch for a thing in writing; a certificate is an authoritative attestation, and any form which affirms the fact in writing is sufficient." *Id.*

17

First American Title argues that the document prepared by Ms. Young is merely a one-page checklist with some handwritten notations. Mark Rosser, counsel for First American Title, testified by affidavit that the title exception report is not a "certified abstract." (Rosser Second Aff., ¶ 6). Ms. Atkins specifically prepared the document for Paramount's use in determining the insurability or marketability of the Stonehenge Property. The document purportedly lists all liens and encumbrances found by the abstracter, Ms. Young. Given the plain and ordinary meaning of the term "abstract of title," the Court finds, for purposes of this motion, that the document is an "abstract" as that term is used in Section 8.f of the Agency Contract. With regard to certification, First American Title argues that because the document prepared by Ms. Young contains neither a seal nor any language vouching for the accuracy of the report or attesting to the truth of the matters contained therein, it cannot be "certified." (Docket No. 130 at 4). The document does include a signature line at the bottom with the words "PREFORMED BY" [sic] next to the signature line, where Ms. Young, who performed the title examination, signed and dated the document. The Court finds that Paramount has not carried its burden of establishing that Ms. Young's signature constitutes authentication by a certificate or an authoritative attestation sufficient to be "certified" as used in the Agency Contract. There are clearly disputed issues of fact as to the intent of the parties, and the Court cannot make that determination on the pending motions. Accordingly, the Court will deny Paramount's motion for summary judgment and deny First American Title's cross-motion.

   **D.     *Plaintiff First American Title Insurance Co.'s Motion for Summary Judgment against Defendant Frances Atkins (Docket No. 92) and Defendant Atkins' Cross-Motion for Summary Judgment against First American Title (Docket No. 96)***

First American Title moves for summary judgment against Defendant Frances Atkins, claiming that she is liable to First American Title for negligence in providing the faulty title examination report. First American Title contends that, as a result of Atkins' negligence, it suffered damages, including $286,503.62 it was forced to pay to the Garlands, plus the attorney's fees and expenses of $24,738.12 incurred in the title litigation, for a total of $311,241.74. First American Title seeks an award of prejudgment interest on this amount.

First American Title also contends that Atkins is liable to First American Title for the above amounts because it, having expended $311,241.74 on behalf of the Merrills to clear the title to their property, is subrogated to the Merrills' claims against Atkins.

Atkins maintains that First American Title is not entitled to summary judgment against her because it had no relationship with Atkins that would entitle it to common law indemnity or subrogation. Atkins claims that, even if First American Title is entitled to subrogation, her actions were not the proximate cause of First American Title's injury because the acts of other parties were superseding causes; thus, she should not be liable for all of First American Title's claims because Cumberland County Bank and the Garlands should also be liable due to their culpable conduct.

### 1. Subrogation

" 'Subrogation is a right which is founded upon equity and justice and accrues when one person for the protection of his own interests, pays a debt for which another is primarily liable.' " *Wimberly v. Am. Cas. Co. of Reading, Pa. (CNA)*, 584 S.W.2d 200, 203 (Tenn.1979) (quoting *Amos v. Central Coal Co.*, 38 Tenn. App. 626, 277 S.W.2d 457, 462 (1954)). With respect to insurance, "subrogation allows the insurer to 'stand in the shoes' of the insured and assert the

rights of the insured against a third party." *York v. Sevier County Ambulance Auth.*, 8 S.W.3d 616, 618-19 (Tenn.1999) (citing *Wimberly*, 584 S.W.2d at 203). The Tennessee Supreme Court has held that, "in the absence of legal compulsion to pay the debt of another, voluntary payment of another's debt, absent fraud, accident, mistake, or by contract with the payee, does not entitle one to subrogation." *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 538 (Tenn. 2006).

According to First American Title, Atkins is liable because First American Title, having expended $311,241.74 on behalf of the Merrills to clear the title to their property, is subrogated to the Merrills' claims against Atkins, which arise from Atkins' negligence. This subrogation arises under Section 13 of the title policy, which provides that when First American Title pays a claim under the policy, the subrogation rights vest in First American Title.

The Court finds that First American Title is subrogated to the Merrills' claims in this case.

Atkins contends she should be relieved of liability based on the actions of First American Title. Atkins claims that First American Title failed to effectively assert the legal defense of inverse order of alienation and other defenses in the initial state court action that could have prevented it from making the payment to the Merrills. Atkins argues that, because First American Title was under no legal obligation to pay, it should not recover from Atkins for any damages that it may have incurred. At a minimum, says Atkins, defenses were available that could have at least reduced the amount of the Garlands' claim.

Atkins contends that First American Title's inaction during the state court litigation placed the Merrills in jeopardy and caused First American Title to make full payment to the Garlands. For example, Atkins has submitted evidence supporting her contentions that

20

seventeen months elapsed without First American Title obtaining discovery in the Chancery

Court action; that  First American Title sought a temporary injunction with little or no proof to

present to the Chancellor; that First American Title failed to develop proof of the Bank's

involvement and failed to seek contribution from the Bank; and First American Title failed to

obtain credit for the

fact that the Garlands acquired both the Homestead property as well as the full payoff on the title

insurance policy.

On the other hand, First American Title has presented evidence supporting its position

that it complied with its duty to defend the Merrills' title to the property and in no way acted as a

"volunteer" in paying for release of the deed of trust.  Counsel Mark Rosser testified that First

American Title filed suit in state court to attempt to prevent the foreclosure on the Merrills'

property and, in that suit, argued for application of the doctrine of inverse order of alienation,

among other defenses.  First American Title also filed a motion for a temporary injunction,

which was denied.  To avoid foreclosure of the property and to comply with its legal obligations

under the policy, First American Title ultimately paid the amount demanded by the Garlands,

$286,503.62.   Atkins notes that First American Title did not raise the doctrine of inverse

alienation until August 30, 2007,  eleven months after the Chancery Court action was filed and

only after the threat of foreclosure sale.

Due to the various defenses raised by parties in the litigation, most of which are

intertwined and present factual disputes, the Court finds that there are genuine issues of material

fact as to whether First American Title's own actions preclude its recovery, or any part thereof,

in this case.  Atkins' Motion against the Plaintiff, therefore, will be denied.

### 2. *Negligence*

First American Title contends that it is entitled to summary judgment on its claim of negligence against Atkins for providing the faulty title examination report.   Atkins, on the other hand, maintains that there are genuine issues of material fact as to whether her actions were a proximate cause of First American Title's injury.

Under Tennessee law, the elements of a claim for negligence are: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation."  *Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).   There appears to be no dispute that Atkins breached a duty of care owed to First American Title and that First American Title suffered an injury or loss, that loss being the wrongful foreclosure and its subsequent payment to the Merrills.   The parties' dispute centers on causation.

Cause in fact and proximate cause are two distinct elements, both of which must be established.  The Tennessee Supreme Court has explained the difference between them as follows:

> Cause in fact refers to the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury or loss. Thus, cause in fact deals with the "but for" consequences of an act. The defendant's conduct is a cause of the event if the event would not have occurred but for the conduct.  In contrast, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established.

*White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998)(quotation omitted). Proximate causation is the "ultimate issue" in negligence cases. *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991)(citation omitted). "[P]roximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Id.* at 775.

Atkins concedes that her actions may have been a "but for" cause of First American Title's injuries. However, she asserts that her breach was not a proximate cause of those injuries. According to Atkins, the wrongful foreclosure was not a "natural and probable consequence" or "foreseen or anticipated injury" of Atkins' actions. Rather, Atkins could not have "reasonably anticipated" that the Bank would not tell Paramount and the Merrills about the encumbrance on the property when Paramount sent the payoff letter; that the Bank would not have released the encumbrance on the Stonehenge Property when the Bank was given more than full consideration for the loan on the Homestead Property; and that the Bank would assign the deed of trust to the Garlands after the Bank was given full consideration. For these reasons, Atkins asserts that the Bank and the Garlands' intentional and/or negligent acts were the proximate cause of First American Title's injury because the wrongful foreclosure was a "natural and probable" consequence of their actions. In any event, Atkins urges, proximate cause should be determined by the trier of fact and not at the summary judgment phase. The Court agrees.

Atkins further argues that First American Title should not be granted summary judgment against her because the actions of Paramount, the Bank, and the Garlands were superseding causes to First American Title's alleged injury. A defendant will be relieved on liability if there is an intervening cause by another person that was not caused by the defendant's negligence and

23

the intervening act was not reasonably foreseeable. *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991). When an intervening cause is a superseding cause is a question for the trier of fact. *Id.* at 775-76.

Based on the record currently before the court, summary judgment on First American Title's negligence claim against Atkins is inappropriate. Genuine issues of material fact exist as to whether the actions of other Defendants, namely the Bank and the Garlands, were superseding causes of First American Title's claimed injuries. The trier of fact must resolve these issues.

Accordingly, First American Title's motion against Atkins, and Atkins' motion against First American Title, will be denied.

### E. Defendant Atkins' Motion for Summary Judgment against Cumberland County Bank (Docket No. 96) and Cumberland County Bank's Cross-Motion against Atkins (Docket No. 116)

Atkins seeks summary judgment on the issue of the Bank's liability and is seeking a determination that the Bank is liable as a matter of law for a proportionate share of the loss being claimed by First American Title. The Bank contends that Atkins' claims against the Bank should be dismissed because she is not entitled to contribution or indemnity.

#### 1. Equitable Subrogation

In her motion for summary judgment against the Bank, Atkins contends that the Bank should be held liable for damages even if Atkins is deemed negligent based on its violation of the doctrine of inverse order of alienation, its negligence, its breach of contract and breach of statutory duty. Atkins asserts that she has standing to assert these defenses pursuant to the doctrine of equitable subrogation.

24

Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999)(citation omitted). The burden is on the party claiming subrogation to prove an entitlement. *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 675 (Tenn. 1968). The question of whether equitable subrogation will be afforded is answered by equitable principles. *Id*. at 676. Equitable subrogation is a remedy whose application depends upon the balancing of the equities involved. *See Lawyers Title Ins. Corp. v. United Am. Bank*, 21 F. Supp.2d 785, 792 (W.D. Tenn.1998). Equitable subrogation "will not be enforced when it would work injustice to the rights of those having equities." *Castleman,* 432 S.W.2d at 674.

"In balancing the equities between the parties, the negligence of the party seeking subrogation is a relevant factor for consideration." *Assocs. Home Equity Services, Inc. v. Franklin Nat'l Bank*, 2002 WL 459007 (Tenn. Ct. App. Mar. 26, 2002) at * 4. The degree of negligence and its consequence must depend to a great extent upon the factual circumstances involved. *Castleman*, 432 S.W.2d at 677. "The harm suffered by third parties if subrogation is granted is another factor to be considered as it is part of the weighing of equities. Even clear or culpable negligence will not prevent an equitable remedy if the other party will not be prejudiced thereby." *Assocs. Home Equity Services, 2002 WL 459007, at * 4* . In *Castleman*, the Tennessee Supreme Court granted the remedy of subrogation to a title company even though the title company was negligent in failing to discover a prior encumbrance. *Id.*

Here, the Bank acknowledges that the balancing of equities "generally will raise questions of fact and should not be decided as a matter of law." (Docket No. 155 at 11).

25

However, the Bank suggests that "the unique facts of this case justify a summary decision that Ms. Atkins is not entitled to equitable subrogation[,]" arguing that, even if the Bank was negligent somehow, Ms. Atkins was "more culpable." (Docket No. 155 at 12). This is the precise type of weighing of the equities that must be considered by the trier of fact. With the negligence of multiple parties very much a disputed issue in this case, the Court cannot rule as a matter of law that Ms. Atkins is not entitled to equitable subrogation.

Accordingly, Atkins' motion will be denied as to her claim of equitable subrogation against the Bank. Therefore, the Court need not reach the alleged subrogated defenses of inverse order of alienation, breach of contract and statutory duties, and negligent misrepresentation.

### 2. Contribution

The Bank seeks summary judgment on Atkins' cross-claim for contribution and/or apportionment of fault between her and the Bank. As noted previously herein, the right of contribution only exists between defendants who share a common obligation or liability, *see Squibb*, 948 S.W.2d 752, 754, such as joint tort-feasors, *see* Tenn. Code Ann. § 29-11-101.

The Bank argues that the right of contribution does not exist here because Atkins was hired by First American Title's agent, Paramount Title, and therefore had a contractual obligation to search title for the policy that First American Title ultimately issued. The Bank contends that it did not have such any such contractual relationship with First American Title.

First American Title sued both Atkins and the Bank in tort.[2] First American Title alleges that the Bank "intentionally or negligently" misled Paramount Title and the Merrills. It alleges that Atkins "negligently" failed to discover the lien in question. (*See* Compl. ¶¶ 27, 43). Atkins

_____

[2] In contrast, First American Title sued Paramount for breach of contract only. Complaint, ¶¶ 39-40.

concedes her negligence, but genuine issues of material fact remain as to the Bank's negligence. Apportionment of fault is a question for the trier of fact. *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994). Therefore, summary judgment is inappropriate as to whether Atkins and the Bank are joint tortfeasors under Tennessee's comparative fault scheme as set forth in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), and whether Atkins is entitled to contribution. Accordingly, the Bank's motion will be denied as to Atkins' contribution claim against the Bank.

### 3. Indemnity

The Bank seeks summary judgment on Atkins' cross-claim for indemnity against the Bank. As previously noted herein, the right to indemnity under Tennessee law depends on a qualitative difference in the level of fault between the parties. *See Winter*, 914 S.W.2d 527, 541-42. Although Atkins has conceded that she acted negligently, the Bank denies that it acted negligently, and genuine issues of material fact exist in that regard. Therefore, the trier of fact should determine whether the Bank was negligent and, if so, whether the negligence of the Bank was or was not qualitatively greater than the admitted negligence of Atkins in conducting a defective title search. Accordingly, the Bank's motion for summary judgment as to Atkins' indemnity claim will be denied.

### F. Defendant Atkins' Motion for Summary Judgment against Defendants Noelle and Russell Garland (Docket No. 96) and the Garlands' Cross-Motion against Atkins and Paramount Title (Docket No. 98)

Atkins and Paramount Title assert cross-claims against the Garlands that may constitute affirmative defenses in their favor against First American Title. Atkins and Paramount Title submit that they should avoid liability based on the doctrine of inverse order of alienation

27

and the fact that the Garlands were unjustly enriched. The Garlands seek summary judgment on these cross-claims.

Because the Court previously denied Atkins' motion on her claim of equitable subrogation against the Bank, the above referenced motions concerning subrogated defenses which Atkins or Paramount Title might have will also be denied.

### G. Garlands' Motion for Summary Judgment as to First American Title's Claims (Docket No. 98)

In their motion for summary judgment against First American Title, the Garlands argue that they are entitled to summary judgment on all claims brought by Plaintiff against them. The Garlands contend that they were not parties to any alleged conspiracy; that they did not acquire a $248,000 note which had been fully paid; that they were not estopped by the Bank's payoff statement from enforcing the $248,000 deed of trust against the Merrills; and that the doctrine of inverse order of alienation does not apply or, if it does, it only impaired the Garlands' right to enforce the $248,000 deed of trust to a limited extent. (Docket No. 113, pp. 7-16).

These issues involve the same interrelatedness of claims coupled with the many disputed issues of fact that make summary judgment inappropriate. Accordingly, the Garlands' motion as to First American Title's claims will be denied.

### H. Garlands' Motion against the Bank (Docket No. 98) and the Bank's Motion against the Garlands (Docket No. 116)

The Garlands contend that, if they are obligated to reimburse First American Title for part or all of its $286,55.053 payment, they should receive a corresponding judgment on their cross-claim against the Bank. With regard to their cross-claim against the Bank, the Garlands' three theories of recovery are: breach of warranties of title of the note which the Garlands

28

ultimately acquired from the Bank, restitution based on impairment of collateral, and contribution and indemnity.

### 1.    Bank's breach of implied warranties as an assignor

The Garlands claim that the Bank breached one or more warranties of transfer with respect to the assignment of the $248,000 deed of trust to the Garlands.  The Bank denies making any such warranties.

> Unless a contrary intention is manifested, one who assigns or purports to assign a right . . . for value warrants to the assignee
>
> (a)    that he . . . has no knowledge of any fact which would [impair the value of the assignment];
>
> (b)    that the right, as assigned, actually exists and is subject to no limitations or defenses good against the assignor other than those stated or apparent at the time of the assignment....

*Restatement (Second) of Contracts* § 333(1); *TSC Indus. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)(Tennessee courts often rely on the Restatement in the absence of any contrary Tennessee statute or reported case).  A claim for breach of transfer warranties is limited to "an amount equal to the loss suffered as a result of the breach."  Tenn. Code Ann. § 47-3-416(b).

After reviewing the parties' briefs and evidence submitted in support thereof, the Court finds that there are many disputed issues with regard to the Garlands' cross-claim for breach of transfer warranties:  whether the Bank disclaimed any warranties by endorsing the spec loan promissory note to the Garlands "without recourse in law or equity"; whether the Garlands took the instrument knowing of the defenses; and whether the Garlands suffered any damages as a result of the alleged breach of transfer warranties.  For example, as to the latter, the Bank and the

Garlands advance entirely different methods of mathematical analysis regarding the Garlands' alleged losses. (*See* Docket No. 148 at 3). In fact, the Bank contends that the Garlands have suffered no losses at all. (*See* Docket No. 118 at 4). Rather, according to the Bank's calculations, the Garlands have profited by as much as $350,000. (*Id*. at 5). Further, the Bank has adduced evidence that the Garlands, by their actions, ratified some of the conduct resulting in what they now claim as losses. (*Id*. at 6).

Given the numerous disputed issues of fact, summary judgment on the Garlands' cross-claim for breach of transfer warranties is inappropriate.

### 2.    *Bank's duty not to impair collateral*

The Garlands allege that, depending on whether and to what extent First American Title recovers its payment from the Garlands, Dr. Garland is entitled to recovery from the Bank for its impairment of the collateral for the $248,000 loan. The Garlands maintain that the Bank's failure to monitor either the progress of construction as it advanced loan proceeds or the Harrises' use of the loan proceeds constitutes an unjustified impairment of collateral.

As the Bank points out, "impairment of collateral" is a defense to enforcement of an obligation against a surety. *See Restatement (Third) of Security & Suretyship and Guaranty* § 42. It is not a cause of action except in very limited circumstances. *Id.* It is unclear, based on the current record, whether it applies in this case and, if so, whether it was waived because it was not asserted against the Bank.

There are numerous additional issues of fact precluding summary judgment on this claim, for example: whether there actually was impairment of the collateral; whether the Bank's alleged failure to monitor the construction progress constituted a lack of reasonable care; whether the

30

loan was improperly administered; whether Dr. Garland ratified any impairment (by accepting the revised budget for completing the spec house, not foreclosing to cut off the materialman's lien, and allowing Harris to complete the house); and whether Dr. Garland knew or should have known of the alleged impairment of collateral at the time he satisfied his guaranty liability for the $248,000 loan.  The cross-motions for summary judgment on the Garlands' cross-claim for impairment of collateral therefore will be denied.

### 3.  *Indemnity*

The Garlands allege a cross-claim for indemnity based on the assertion that any liability of the Garlands is derivative of the liability of the Bank.  Only the Bank moves for summary judgment on the Garlands' indemnity claim; the Garlands do not seek summary judgment on this claim.  In response to the Bank's motion, the Garlands argue that the Bank's oversights are a primary, although not exclusive, cause of this litigation.  Therefore, urge the Garlands, the trier of fact must resolve the questions of comparative fault in this case.

As with the other claims for implied indemnification in this case, the Court finds that summary judgment is inappropriate.  A person's right to recover under the theory of indemnification depends on the relationship of the parties and the fault of the parties.  *Electronic Controls v. Ponderosa Fibres of Am.*, 19 S.W.3d 222, 229 (Tenn. Ct. App. 1999).  Because Tennessee law provides for implied indemnification only in situations in which the party to whom the loss is to be shifted is at fault or is responsible to a degree that is "qualitatively different" from the party seeking indemnity, *see, e.g, Winter v. Smith*, 914 S.W.2d 527, 541-42 (Tenn. Ct. App. 1995), and the parties here dispute to what extent each is at fault for the liability

31

in this case, the trier of fact must determine each party's degree of fault. The Bank's motion for summary judgment as to the Garlands' cross-claim for indemnity must be denied.

Accordingly, the Garlands' motion against the Bank, and the Bank's motion against the Garlands, will be denied.

## I.     The Bank's Motion for Summary Judgment against First American Title (Docket No. 116)

First American Title asserts two claims against the Bank on behalf of the Merrills: Count I, fraud and misrepresentation based on an allegedly false payoff letter prepared by the Bank; and Count II, civil conspiracy for participating in a wrongful foreclosure with the Garlands. Both of these claims are subrogation claims. First American Title did not assert any claims on its own behalf against the Bank.

### 1.     Subrogation

The Bank argues that First American Title is not entitled to subrogation of the Merrills' rights. The Court has found that First American Title is entitled to subrogation of the Merrills' claims, pursuant to the title insurance policy.

### 2.     Intentional Fraud

In Count I of the Complaint, First American Title, on behalf of the Merrills, alleges that Bank's payoff letter was "intentionally" or negligently misleading. (Compl. ¶ 27). The Bank now moves for summary judgment on this claim, alleging that there is no evidence to support First American Title's allegation.

In Tennessee, the elements of fraud are: "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, ... (3) an injury caused by reasonable reliance on the representation [and (4) the requirement] that the misrepresentation involve a past

32

or existing fact . . . ."  *Hermosa Holdings, Inc. v. Mid-Tennessee Bone & Joint Clinic, P.C.*,

2009 WL 711125 at \*10 (Tenn. Ct. App. Mar. 16, 2009)(quoting *Dobbs v. Guenther*, 846

S.W.2d 270, 274 (Tenn. Ct. App. 1992)); *Black v. Black*, 166 S.W.3d 699, 705 (Tenn. 2005).

Although First American Title responded to the Bank's motion for summary judgment,

First American Title did not respond specifically to the Bank's arguments challenging First

American Title's intentional fraud claim.   First American Title has not provided, nor is the

Court  aware of, any evidence showing that the Bank intentionally provided a payoff  letter

containing erroneous information to First American Title.   There is, however, evidence before

the Court showing that the Bank suffered a financial loss by providing the erroneous amount in

the payoff letter, in that the Harrises gained $123,106.71 from the closing that the Bank alleges

should have gone to the Bank.  (Docket No. 146, ¶ 107).   There is no reason to believe that the

Bank would have acted contrary to its best interests.  Moreover, the representation that First

American Title alleges was fraudulent (the payoff letter) was directed to Paramount Title, not the

Merrills.  Therefore, the Court finds that no genuine issue of material fact exists, and the Bank is

entitled to judgment as a matter of law on First American Title's intentional fraud claim in Count

I of the Complaint.

First American Title also alleges an intentional fraud claim in Count II of the Complaint,

premised not on the allegedly false payoff letter, but on the conduct of the Bank in transferring

the Harris note and the Stonehenge deed of trust to the Garlands.  First American Title

specifically alleges that the Bank "knew or should have known that the Stonehenge Property

should have been released" from that deed of trust.  (Compl. ¶ 33).   First American Title

continues:  "Rather than releasing the Stonehenge Property from the Deed of Trust, the Bank

33

attempted to capitalize on its own wrongdoing by using the Deed of Trust to the Bank's advantage in its negotiations with the Garlands."  (Compl. ¶ 33).

Allegations of fraud must be plead with particularity.  *See Hermosa Holdings*, 2009 WL 711125, at *10 ("A claim of fraud is deficient if the complaint fails to state with particularity an intentional misrepresentation of a material fact.  To pass the particularity test, the actors should be identified and the substance of each allegation should be pled.").

 The Bank argues that, among its other deficiencies, First American Title's conclusory Complaint allegations fail to identify an intentionally dishonest representation made by the Bank to the Merrills.   Indeed, it is unclear on what intentionally false representation First American Title relies for its Count II intentional fraud claim.  The substance of this representation has not been pled.  Further, no particular defendant is identified as the one making a false and misleading statement.  The Bank's argument is well taken that this claim is not pled with particularity.

As with the intentional fraud claim in Count I of its Complaint, First American Title failed to respond to the Bank's motion seeking summary judgment on this claim.   First American Title has not adduced, nor is the Court aware, of any evidence supporting First American Title's allegation that the Bank intentionally defrauded First American Title when it transferred the Harris note and Stonehenge deed of trust to the Garlands.  The Bank has maintained throughout this litigation that it had an obligation to transfer the note and deed of trust to the Garlands as a result of their having paid the Harrises' obligation in full pursuant to the guaranty and that, if it had released the deed of trust, the Garlands would have filed a lawsuit against the Bank.

34

Given First American Title's failure to plead this claim with particularity and its failure to respond to the Bank's motion for summary judgment as to this claim, the Court finds that judgment as a matter of law in the Bank's favor is appropriate as to First American Title's intentional fraud claim in Count II of the Complaint.

### 3.       *Civil Conspiracy*

First American Title alleges in Count II of the Complaint that the Bank, the Harrises, and the Garlands engaged in a civil conspiracy against the Merrills.

In Tennessee, the elements for civil conspiracy are: "'(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury.'" *Amodeo v. ConservCare, LLC*, 2009 WL 736656 at *4 (Tenn. Ct. App. Mar. 20, 2009)(quoting *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)).   In addition, to be actionable under Tennessee law, a civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy.  *See Freeman Mgmt. Co. v. Shurgard Storage Centers, LLC*, 461 F. Supp.2d 629, 642 (M.D. Tenn. 2006).  "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  *Id.* at 642-43.

Civil conspiracies "are rarely proven directly.  They are more often established using circumstantial evidence and inferences drawn from the evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances.  Thus, fact-finders may consider

35

the nature of the acts themselves, the relationship of the parties, the interests of the conspirators, and other circumstances." *Stanfill v. Hardney*, 2007 WL 2827498, *8 (Tenn. Ct. App. Sept. 27, 2007).

First American Title has adduced evidence that, by early 2005, the Bank was aware that it still retained a deed of trust on the Stonehenge Property that had been sold to the Merrills a few months before, yet the Bank never took any action to investigate the matter or to advise Paramount Title or the Merrills of the mistake. (Startup Dep., pp.82-85, 95, 120-21). It has further adduced evidence that, prior to assigning the $248,000 note and deed of trust to Dr. Garland, the Bank made no investigation to determine who owned the Stonehenge Property or who lived there. (Startup Dep., pp. 96-98). First American Title contends that the Bank assigned the note and deed of trust to Dr. Garland, even though it knew the note had been paid and the deed of trust should have been released.

The Bank argues that it was *obligated* to assign the note and deed of trust to the Garlands because the Garlands had paid the note and, therefore, its action cannot form the basis of a claim for civil conspiracy. But First American Title argues, as do other parties in this litigation, that the assignment was made in violation of the law, specifically in violation of doctrine of inverse order of alienation, and was made after the debt had been distinguished.

The Court finds that there are numerous issues of disputed fact with regard to the circumstances of the assignment of the note and deed of trust. Moreover, First American Title's conspiracy claim is based not only on the Bank's assignment of the deed of trust and note to the Garlands, but also on the alleged wrongful foreclosure of the Merrills' home. Because the Court finds that genuine issues of material fact exist as to whether the Bank was a member of a civil

36

conspiracy as alleged by First American Title, the Bank's motion for summary judgment as to

First American Title's civil conspiracy claim must be denied.

### 4. *Negligent Misrepresentation*

The Bank seeks summary judgment on First American Title's negligent

misrepresentation claim.          As stated previously, in Tennessee, the elements of a claim for

negligent

misrepresentation are: (1) the defendant is acting in the course of his business, profession or

employment in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; (2)

the defendant supplies faulty information meant to guide others in their business transaction;  (3)

the defendant fails to exercise reasonable care in obtaining or communicating the information;

and (4)  the plaintiff justifiably relies upon the information.  *John Martin Co. v. Morse/Diesel,*

*Inc*., 819 S.W.2d 428, 431( Tenn. 1991).

It is undisputed that the Bank provided the allegedly erroneous payoff information in the

course of its business and that the Bank provided the information to Paramount for use of

Paramount and its customers in their business transactions.

The Bank first contends that the payoff letter was not a misrepresentation because it was

not false.  The payoff letter clearly refers to only to a single loan, which is identified by loan

number, and gives the payoff for that loan only.  It does not contain any statement that there are

no other loans on the property.  The question, then, is whether providing the payoff for a single

loan in response to Paramount's request was misleading because it omitted additional

information admittedly available to Bank.

Also to be considered in this determination of whether the Bank exercised due care is the Bank's contention that it was the request of Paramount Title that was negligent, not the response of the Bank. The Bank has submitted evidence that the practice in Cumberland County is for the title company to identify on the payoff request that multiple loans are involved. (Looney Dep., pp. 40-41, 51-52, 54 66-69). Thus, the Bank argues that Paramount's request cannot properly be interpreted as a request that the Bank conduct a search for multiple loans and, accordingly, the Bank's response was not misleading.

However, First American Title has submitted evidence that the Bank was negligent in providing an erroneous payoff number to Paramount. According to First American Title's expert witness, David Weakley, the Bank could have prevented the mistake in this case by following sound practices and employing a computer system that provided more than just partial information on its loans. (Weakley Dep., pp. 5-6, 9-14, and Ex. 114 at pp. 3-4). The Court finds that there is a genuine issue of material fact as to whether the Bank acted with reasonable care.

There are also issues of fact regarding whether the Merrills and/or Paramount Title relied on the Bank's payoff letter and, if so, whether that reliance was justified under the circumstances.
Given these disputed facts, First American Title's negligent misrepresentation claim may proceed to trial.

Accordingly, the Bank's motion against First American Title will be granted in part and denied in part. First American Title's intentional fraud claims will be dismissed.

**V.      Conclusion**

For these reasons, Paramount Title Service LLC's Motion for Summary Judgment against Cumberland County Bank (Docket No. 86) will be denied, and the Bank's Cross-Motion against Paramount Title (Docket No. 116) will be granted in part and denied in part. The Bank's Motion will be granted as to Paramount Title's contribution claim against the Bank, and that claim will be dismissed. The Motion will be denied in all other respects.

Cross-Plaintiff Paramount Title Service LLC's Motion for Summary Judgment against Frances M. Atkins (Docket No. 88) will be denied.

Cross-Plaintiff Paramount Title Service LLC's Motion for Summary Judgment against Plaintiff First American Title Insurance Company (Docket No. 90) will be denied, and Plaintiff First American Title Insurance Co.'s Motion for Summary Judgment against Defendant Paramount Title Services, LLC (Docket No. 92) will be denied.

Plaintiff First American Title Insurance Co.'s Motion for Summary Judgment against Defendant Frances Atkins (Docket No. 92) and Defendant Atkins' Cross-Motion for Summary Judgment against First American Title (Docket No. 96) will be denied.

Defendant Atkins' Motion for Summary Judgment against Cumberland County Bank (Docket No. 96) and Cumberland County Bank's Cross-Motion against Atkins (Docket No. 116) will be denied.

Defendant Atkins' Motion for Summary Judgment against Defendants Noelle and Russell Garland (Docket No. 96) and the Garlands' Cross-Motion against Atkins and Paramount Title (Docket No. 98) will be denied.

Defendants Garlands' Motion for Summary Judgment against First American Title (Docket No. 98) will be denied.

Defendant/Cross-Defendants/Cross-Plaintiffs Garlands' Motion for Summary Judgment as to Cross-Claims against the Bank (Docket No. 98) and the Bank's Cross-Motion against the Garlands (Docket No. 116) will be denied.

The Bank's Motion for Summary Judgment against First American Title (Docket No. 116) will be granted in part and denied in part. The Motion will be granted as to First American Title's intentional fraud claims as alleged in Counts I and II of the Complaint. Those claims will be dismissed. The Motion will be denied in all other respects.

An appropriate Order will enter.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE